1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHULA VISTA CITIZENS FOR JOBS AND FAIR COMPETITION, *et al.*, | CASE NO. 09cv0897 BEN (JMA) |
| Plaintiffs, | |
| vs. | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT and GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| DONNA NORRIS, *et al.*, | |
| Defendants, | |
| and | |
| STATE OF CALIFORNIA | |
| Intervenor. | |

## I.  INTRODUCTION

This case presents two questions of first impression.  It asks whether the First Amendment grants a corporation or association the right to serve as the official proponent of a local ballot initiative.  It also asks whether official proponents enjoy a First Amendment right to anonymity during the period when signatures are being gathered.  Having considered the arguments and the evidence presented, this Court answers "no" to both questions.  The plaintiffs also ask that certain statutory requirements governing ballot initiatives be declared void for vagueness.  The Court finds those sections are sufficiently clear to pass constitutional muster.

## II.  BACKGROUND

The Plaintiffs are the Chula Vista Citizens for Jobs and Fair Competition (an unincorporated association), the Associated Builders & Contractors, Inc. (a corporation), Lori Kneebone and Larry Breitfelder (residents and registered voters of Chula Vista, California).  The Defendants are Chula Vista city officials sued in their official capacities.  The State of California has intervened to defend the constitutionality of California's elections laws.

Chula Vista Citizens and Associated Builders & Contractors, Inc., attempted to propose an initiative to be placed on the ballot in the City of Chula Vista, but it was rejected by the City Clerk.  Then Kneebone and Breitfelder proposed an initiative and it was accepted and enough signatures collected to place the initiative on the ballot.  The ballot measure, known as "Proposition G," passed on June 8, 2010 by a margin of 55.75% to 44.25%.[1]

Plaintiffs filed their Complaint challenging state and municipal election laws as violating the First Amendment: (a) by preventing corporations and associations from serving as official proponents of Proposition G; and (b) by requiring the official proponents of Proposition G to disclose their names during the time of circulating Proposition G for signature gathering.  Plaintiffs also challenge as too vague various terms in the statutes governing ballot initiatives.

Plaintiffs and Defendants have filed cross-motions for summary judgment on all counts of the Complaint.[2]  There are no genuine issues of material fact present and the motions are ripe for decision.  Having reviewed the evidence and arguments, the Court denies Plaintiffs' motion and grants Defendants' motion.

---

[1] See, www.chulavistaca.gov/ City_Services/ Administrative_Services/ City_Clerk/ PDFs/ ElectionDayResultsComplete1911-2010_002.pdf (last visited Mar. 21, 2012).
 Because Proposition G eventually qualified and passed, this case would be moot, but for the exception for Constitutional injuries which are capable of repetition while evading judicial review. *See FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *Farris v. Seabrook*, 667 F.3d 1051, 1056 (9th Cir. 2012) ("The exception frequently arises in election cases.").  This case fits the exception.

[2] Summary judgment is proper where the pleadings and exhibits demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.  DISCUSSION**

**A.     THE ELECTOR (OR NATURAL PERSON) REQUIREMENT**

**Only Electors May Be Official Proponents; Only Natural Persons May Be Electors**

The California Constitution provides that its citizenry may propose laws for popular consideration.  Likewise, the City of Chula Vista Charter also permits its citizenry to propose ordinances for the ballot.  To begin the process, both Chula Vista and California require a ballot initiative be officially and formally proposed by an "elector."  *See* City of Chula Vista Charter § 903; Cal. Elec. Code § 342.  Section 903 of the City Charter states in part,

> There are hereby reserved to the *electors* of the City the powers of the initiative and referendum and of the recall of municipal elective officers.

(emphasis added).  Chula Vista's Charter incorporates the California Elections Code.  Under California Elections Code § 9202(a), to start the process a "proponent" must sign and file a notice of intention with the text of the ballot initiative.[3]  For state-wide measures, California Elections Code § 342 defines an initiative proponent in terms of "electors,"

> "Proponent or proponents of an initiative or referendum measure" means, for statewide initiative and referendum measures, the *elector or electors* who submit the text of a proposed initiative . . .

(emphasis added).  California Elections Code § 321 defines an "elector" to be a natural person and a resident,

> "Elector" means any person who is a United States citizen 18 years of age or older and a resident of an election precinct at least 15 days prior to an election.

An "elector" may be a voter once he or she registers to vote.  *See* Cal.  Elec. Code § 359.  Consequently, only a natural person may be an official initiative proponent because the privilege is restricted to "electors."

Plaintiffs do not disagree, but argue that the natural person requirement offends the First Amendment to the United States Constitution.  Consequently, Plaintiffs ask this Court to declare

---

[3] *See* note 13 *infra*.

1   California Elections Code §§ 342 and 9202 unconstitutional[4] to the extent that they exclude

2   corporations and unincorporated associations from serving as official proponents of a municipal

3   ballot initiative.

4   **Though Corporations and Associations Have First Amendment Rights,**
    **They May Not Propose Legislation Through a California Ballot Initiative**

5

6   Assuming that Plaintiffs have Article III standing,[5] their arguments are unpersuasive. The

7   _____

8   [4] Plaintiffs describe their case as both a facial and as-applied challenge. It is actually in the nature of an as-applied challenge and will be adjudged as such. Generally, for Plaintiffs to succeed

9   in a facial challenge they must "establish that no set of circumstances exists under which the Act would be valid, *i.e.,* that the law is unconstitutional in all of its applications." *Wash. State Grange v.*

10  *Wash. State Repub. Party*, 552 U.S. 442, 450 (2008) (citations omitted). "In the First Amendment context, however, this Court recognizes a second type of facial challenge, whereby a law may be

11  invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 130 S. Ct. 1577, 1587

12  (2010) (citations and internal quotation marks omitted). The elector requirement on its face obviously does not burden the First Amendment rights of natural persons who want to be proponents of a ballot

13  initiative. Rather, it is only non-natural persons (such as the Chula Vista Citizens association and the Associated Builders and Contractors corporation) who seek to qualify as proponents, for which the

14  natural person requirement is an impediment. Moreover, facial challenges are disfavored. *Wash. State Grange*, 552 U.S. at 450. Federal courts exercise judicial restraint in applying the "strong medicine"

15  of declaring a law unconstitutional. One reason for restraint is that facial attacks "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being

16  implemented. . . ." *Id.* at 451.

17  [5] For federal court jurisdiction to exist under Article III, a plaintiff's complaint must describe an actual "case or controversy" or "injury-in-fact." *See generally Lujan v. Defenders of Wildlife*, 504

18  U.S. 555, 560 (1992) (Article III standing requirements). Plaintiffs have described an interest in proposing Chula Vista municipal ballot initiatives, rather than state-wide ballot initiatives. That

19  interest and injury-in-fact affords these Plaintiffs Article III standing to challenge the constitutionality of statutes bearing on local City of Chula Vista initiatives. However, the Complaint does not attack

20  directly the City Charter provision that prevents Plaintiffs from serving as proponents (*i.e.,* the "elector" requirement in § 903.) Defendant City of Chula Vista points out that the "elector

21  requirement is native to the Charter, being expressed in the first sentence of § 903." Instead, Plaintiffs attack the "elector" requirement found in the parallel state statutes

22  *incorporated* by Charter § 903. Thus, Plaintiffs' arrow may have missed its mark. For example, Plaintiffs' prayer for relief seeks,

23      A declaratory judgment declaring unconstitutional, both facially and as applied, the requirement that a proponent of an initiative petition be a natural person, such that

24      associations, corporations, and organizations are excluded from serving as proponents. Cal. Elec. Code § 9202, *as incorporated by the Charter § 903*.

25  *See* Verified Complaint, at 41 ¶2 (emphasis added). Similarly, paragraph three of the prayer seeks,
        A declaratory judgment declaring unconstitutional, both facially and as applied, the

26      definition of 'proponent' in Cal. Elec. Code § 342, *as incorporated by the Charter § 903*."

27  *Id.* at 41 ¶ 3 (emphasis added).
        On the other hand, since Charter § 903 does incorporate provisions of the California Elections

28  Code, by challenging the complimentary state statutes found in §§ 342 and 9202, which are consistent with the "elector" requirement in City Charter § 903, Plaintiffs impliedly challenge the city charter provision, as well. Moreover, it is worth noting that Defendants do not challenge Plaintiffs' Article

main contention advanced by the Plaintiffs is that corporations and associations have a First Amendment right to propose legislation in the form of a qualifying ballot initiative.[6]  Their argument relies upon the Supreme Court's recent decision that "First Amendment protection extends to corporations."  *Citizens United v. FEC*, 130 S. Ct. 876, 899-900 (2010) ("The Court has thus rejected the argument that political speech of corporations or other associations should be treated differently under the First Amendment simply because associations are not 'natural persons.'").[7]  Plaintiffs' contention is both novel and breathtaking in its potential application.  As the City Defendants correctly point out, there is "no record that anybody has ever attacked a state law similar to the elector requirement before . . . . None of the cases cited in plaintiffs' motion addresses the issue, even in dictum or by implication."  May a state or municipality constitutionally limit its law-making machinery to natural person citizen electors?  Or, must it also allow associations and corporations to exercise law-making functions?  Plaintiffs view the question in terms of a corporation's right to engage in protected political speech.  Defendants, on the other hand, view the question in terms of the rights of citizens to self govern.

Plaintiffs contend that the elector requirement impermissibly prohibits associational speakers from speaking.  The argument begins with the well-accepted position that advocating for an initiative petition is core political speech.  It continues with the also well-accepted idea that the circulation of a ballot initiative involves core political speech.  *See Meyer v. Grant*, 486 U.S. 414, 421-22 (1988).  Plaintiffs then attempt to stretch the idea of *advocation* and *circulation* to include the mechanics of *initiation*.  They argue that the act of proposing an initiative is also core political

---

III standing.  Therefore, Plaintiffs' standing will be assumed.

[6] *See* Count 2 of the Complaint.

[7] Not all courts read *Citizens United* as granting corporations political speech rights coextensive with the rights of individuals.  *See e.g., Thalheimer v. City of San Diego,* 2012 WL 177414 at *20 (S.D. Cal. Jan. 20, 2012) (upholding ban on direct corporate contributions); *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 741 F. Supp. 2d 1115, 1132-34 (D. Minn. 2010) (same).

speech and that corporations and associations are banned[8] from speaking in that way.  But the acts of ballot initiation are qualitatively different than acts of engaging in the First Amendment dialog of circulation or advocation.  *Angle v. Miller*, __ F.3d __, 2012 WL 833901*7 & n.5 (9th Cir. Mar. 14, 2012) (citing *Meyer*, 486 U.S. at 424-25) ("There is no First Amendment right to place an initiative on the ballot.")

### The Power of the Initiative Is Reserved to the People of California

"The power of the citizen initiative has, since its inception, enjoyed a highly protected status in California."  *Perry v. Schwarzenegger*, 628 F.3d 1191, 1197 (9th Cir. 2011).  Under California's constitutional form of government, "All political power is inherent in the people." Cal. Const. art. II, § 1; *Schwarzenegger*, 628 F.3d at 1196.  While the state legislature passes most laws, the people of California have retained for themselves the power to pass laws and amend their Constitution.  Cal. Const. art. IV, § 1; *Schwarzenegger*, 628 F.3d at 1196 ("the sovereign people's initiative power is considered to be a fundamental right.").  The state constitution makes clear that this initiative power belongs to people.  Neither corporations nor unincorporated associations are mentioned.  *Cf. Citizens United*, 130 S. Ct. at 972 (Stevens, J., concurring and dissenting in part) ("Corporations . . . are not themselves members of 'We the People' by whom and for whom our Constitution was established.").  "The initiative is the power of the *electors* to propose statutes and amendments to the Constitution and to adopt them or reject them."  Cal. Const. art. II, § 8 (emphasis added); *Schwarzenegger*, 628 F.3d at 1196.  The Supreme Court of California describes the initiative power held by California citizens:

> The amendment of the California Constitution in 1911 to provide for the initiative and referendum signifies one of the outstanding achievements of the progressive movement of the early 1900's.  Drafted in light of the theory that all power of government ultimately resides in the people, the amendment speaks of the

---

[8] Corporate and associational speech is not "banned" by the statutes at issue here in the sense that there could be a criminal or civil penalty for speaking.  *See, e.g.*, *Citizens United*, 130 S. Ct. at 897 (law banning, backed by criminal penalty, corporation from making electioneering communication).  Neither the laws of California nor the City's Charter penalize any person for attempting to propose an initiative.  There is no criminal or civic sanction which may be imposed for "wrongdoers."   Put differently, even non-natural persons may attempt to propose an initiative, advancing any viewpoint, without fear of government penalty.

> initiative and referendum, not as a right granted the people, but as a power reserved by them.

*Assoc. Home Builders etc., Inc. v. City of Livermore*, 18 Cal. 3d 582, 591-92 (1976) (citations omitted); *see also Costa v. Superior Court*, 37 Cal. 4th 986, 1008-09 (2006) (describing the initiative power of California electors).  Just last year, the California Supreme Court described the state's initiative power as a power distinctly reserved to "people" or "electors:"

> Article II, section 1 of the California Constitution proclaims: "All political power is inherent in the people.  Government is instituted for their protection, security, and benefit, and they have the right to alter or reform it when the public good may require."  As this court noted in *Strauss*: "This provision originated in one of the initial sections of the Declaration of Rights contained in California's first Constitution (Cal. Const. of 1849, art. I, § 2), and reflects a basic precept of our governmental system: that the people have the constitutional right to alter or reform their government."
> Although California's original 1849 Constitution declared that "all political power is inherent in the people," it was not until 60 years later — in 1911 — that the California Constitution was amended to afford the voters of California the authority to *directly* propose and adopt state constitutional amendments and statutory provisions through the initiative power.

*Perry v. Brown*, 52 Cal. 4th 1116 (2011) (emphasis in original) (citations omitted).  That is not to say that corporations and associations may not promote, discuss, debate, underwrite, or advocate for or against a ballot measure.  But the position of official initiative proponent is a special role springing from and confined by state law.  As *Perry* points out, "[u]nder these and related statutory provisions, *the official proponents of an initiative measure are recognized as having a distinct role — involving both authority and responsibilities that differ from other supporters of the measure . . . ."  Id.* (emphasis added).

For example, one would rightly expect the Governor and Attorney General to defend a California law passed by popular initiative vote.  But if for some unforseen reason no public defense is mounted, it is only the official proponents who have standing to defend the initiative in court.  *Perry v. Brown*, __ F.3d __, 2012 WL 372713 at *2, *9 (9th Cir. Feb. 7, 2012) ("we *do* know that California law confers on 'initiative sponsors' the authority 'to defend, in lieu of public officials, the constitutionality of initiatives made law of the State'") (quoting *Perry v. Brown*, 52 Cal. 4th 1116).

1    Like the State, the people of Chula Vista in adopting a governing charter, reserved to

2   themselves, as *electors*, the power of the city ballot initiative.  In view of the self-governance

3   model adopted by the citizens of Chula Vista and of California, the elector requirement makes

4   good public policy sense, since the act of proposing a ballot initiative is the first step in an act of

5   law-making.  The State argues, and *Perry* recognizes, that there are several legislation-related

6   examples where the actors must be electors and thus natural persons.  For example, only electors

7   are allowed to vote.  Only electors are allowed to run for office.  Only electors may sign

8   nominating papers necessary to qualify candidates for the ballot.  Only electors (as elected

9   legislators) are allowed to introduce bills to the legislature.  Thus, it is entirely consistent that only

10   a natural person elector may be an official ballot initiative proponent.

11    Plaintiffs do not come to terms with the idea that the natural person citizens of Chula Vista

12   may constitutionally reserve to themselves the power to make law, for their argument overlooks

13   the essence of self-government.  *Brown*, 2012 WL 372713 at *10 ("The People of California are

14   largely free to structure their system of governance as they choose.").  Permitting a corporation or

15   association to be a ballot initiative proponent could lead to local laws being proposed by foreigners

16   unready to contribute to the city or bear the responsibility of citizenship.  Worse, corporations with

17   assets, operations, or shareholders located outside the city, state, or country might propose

18   initiatives adversely affecting the welfare of citizens of Chula Vista, in order to gain a business

19   advantage elsewhere.  Likewise, associations of people who live and work in other locales, could

20   propose laws to their own advantage or the disadvantage of Chula Vistans.  Even harmless or well-

21   meant initiatives, could drown out the legislative ideas of the City's citizens.  By requiring

22   proponents to be electors, Chula Vista protects its initiative process from becoming a tool of

23   foreigners and artificial entities.  That is a choice the people of the City of Chula Vista may freely

24   make without running afoul of the First Amendment.

25    **Proposing a Ballot Initiative is Part of a Legislative Process**

26    The State of California points out in its brief that "the submission of an initiative petition is

27   the first step in a legislative process."  According to the State, "because an initiative petition is a

28

legislative document, it is legitimately limited to members of the legislative body, in this case the electorate."[9]  *Id.*  The California Supreme Court underscores the distinction between an official proponent and all other supporters of a ballot measure.  "[T]he official proponents of an initiative measure are recognized as having a distinct role — involving both authority and responsibilities that differ from other supporters of the measure."  *Perry*, 52 Cal. 4th 1116; *see also S.F. Forty-Niners v. Nishioka*, 75 Cal. App. 4th 637, 648 (1999) ("The initiative petition with its notice of intention is not a handbill or campaign flyer – it is an official election document . . . . It is the constitutionally and legislatively sanctioned method by which an election is obtained on a given proposal.").

States are allowed "significant flexibility" in designing their own initiative systems.  *Doe v. Reed*, 130 S. Ct. 2811, 2818 (2010) ("To the extent a regulation concerns the effect of a particular activity in that process, the government will be afforded substantial latitude to enforce that regulation.").  In this case, the elector requirement is a reasonable state restriction on who may officially energize the ballot initiative machinery.  "These mechanisms of direct democracy are not compelled by the Federal Constitution.  It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action."  *Id.* at 2827 (Sotomayor, J., concurring).  "As the Court properly recognizes, each of these structural decisions inevitably affects – at least to some degree – the individual's right to speak about political issues and to associate with others for political ends."  *Id.* at 2827-28 (citations and internal quotations omitted).  "Regulations of this nature, however, stand a step removed from the communicative aspect of petitioning, and the ability of the States to impose them can scarcely be doubted."  *Id.* (citations and internal quotations omitted).  The elector (or natural person)

---

[9] Plaintiffs point to state court decisions where associations and corporations acted as ballot initiative proponents.  *See, e.g., Citizens for Responsible Behavior v. Superior Court*, 1 Cal. App. 4th 1013 (1992); *Save Stanislaus Area Farm Economy v. Bd. of Supervisors*, 13 Cal. App. 4th 141 (1993); *Alliance for a Better Downtown Millbrae v. Wade*, 108 Cal. App. 4th 123 (2003).  None of these cases address the question of whether an association or corporation may be an official proponent under state law nor the federal constitutional implications.  Instead, they concern other questions such as  the legality of the proposed initiative or the satisfaction of the numerosity requirement for collected signatures.  Certainly, the official ballot measure proponents recently discussed in *Perry* were natural person electors of California.

requirement is premised upon the distinction between an elector who proposes a measure, and all other persons who may evaluate and advocate for or against its passage.  It is a step removed from restrictions on speech and debate.  It is a rational, reasonable, and constitutional choice by the people of Chula Vista acting in their sovereign capacity, to fashion rules for lawmaking by popular initiative.  Consequently, the restriction does not trench on the Plaintiffs' First Amendment right to otherwise engage in core political speech.

Moreover, the elector requirement is not subject to strict scrutiny, as Plaintiffs assert.  If Chula Vista Charter § 903 restricted core political speech, it would need a compelling interest and it would need to be narrowly tailored to achieve that interest.  However, the preferred protections for core political speech are out of place in the context of ballot initiative mechanics.  Serving in the position of an official ballot initiative proponent is not pure speech.  It is a legislative act.  But, even assuming for the sake of argument, that serving as an official proponent is speech to some degree, it is speech a large step removed from the core communicative aspect of circulating a petition and publicly advocating for its passage or defeat.  It is speech much closer to the mechanics of the ballot initiative process.

"It is by no means necessary for a State to prove" that measures to control the mechanics of the ballot initiative process "are narrowly tailored to its interests."  *Reed*, 130 S. Ct. at 2827 (Sotomayor, J., concurring) (citing *Celebrezze*, 460 U.S. at 788).  "To require that every voting, ballot, and campaign regulation be narrowly tailored to serve a compelling interest 'would tie the hands of States seeking to assure that elections are operated equitably and efficiently.'"  *Buckley v. Am. Const. Law Found.* ("*Buckley II*"), 525 U.S. 182, 206 (1999) (Thomas, J., concurring) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).  Thus, strict scrutiny is not the appropriate test for the elector requirement.  Instead, it is a regulation for which the Supreme Court recognizes that states and municipalities are given leeway.  It this case, the elector requirement is a rational, reasonable, and necessary measure to protect Chula Vista's form of self-government.  But, it is not the end of the matter.

Plaintiffs offer another argument against the requirement that a proponent be a natural

person, again relying on *Citizens United*.  They argue that by not permitting corporations and associations to act as official proponents, the natural person requirement forces these non-natural persons to speak by proxy through the mouths of their members.  The Achilles' heel of this contention is that the argument assumes in the first place that the First Amendment grants corporations and associations the right to officially propose a ballot initiative.  As discussed above, however, Chula Vista and California reserve only to electors the power to engage the machinery of lawmaking by ballot initiative.  Since an elector must be a natural person and resident, and since corporations and associations are not natural persons and may not be residents, the speech-by-proxy concept does not fit.  An association may perhaps persuade one of its members or a corporation may persuade an employee to propose a ballot initiative.  But ultimately it is the natural person's right and choice to be an official proponent.

Plaintiffs also argue that the elector requirement creates an impermissible unconstitutional condition by forcing corporations and associations to choose between two protected rights:

> Chula Vista Citizens 'may either engage in the protected political speech inherent in initiative petitions by revealing one of their members as the proponent of their initiative, or they may allow their members to associate without being revealed to the government. They may not, however, exercise both their right to speak and their right to privacy in their associations.'

Like the ill-fitting speech-by-proxy argument, however, this argument also relies on the premise that an association has a right to officially propose a ballot initiative.  Once again, however, that right is permissibly reserved to natural person electors.  Neither corporations nor unincorporated associations have the right to engage in the "speech" of officially proposing a ballot measure.

To sum up, since California and Chula Vista utilize the ballot initiative as a method of making law, and each restrict law-makers to natural person electors rather than artificial person associations and corporations, this Court holds that the elector requirement is constitutional.

**B.      THE OFFICIAL PROPONENT NAME DISCLOSURE REQUIREMENT**

During the process of proposing and qualifying an initiative for a Chula Vista election, the name of the official proponent is required to be disclosed at three times.  First, at the filing of the Notice of Intent to Circulate a Petition.  Second, during the newspaper publication of the Notice of

Intent.  Third, when the copies of the Notice of Intent are circulated for voter signatures.  The Plaintiff proponents do not object to the disclosure requirement in the first two instances.  Indeed, they have already disclosed their names in the process of qualifying Proposition G for the ballot.

Instead, Plaintiffs challenge the mandatory disclosure of their names as official proponents on the text of the proposition used by circulators to solicit voter signatures.[10]  In so doing, Plaintiffs raise another question of first impression.  They contend that the identity requirement defeats their First Amendment right to engage in anonymous political speech.  Once again, this Court disagrees.  The First Amendment right to speak anonymously is not absolute.  In the context of a ballot initiative, the burden on speech is weighed against the People's need for disclosure.  As will be discussed below, in this case, the burden on Plaintiffs' speech is slight and the interests of the government representing the People are substantial.

The individual Plaintiffs, Lori Kneebone and Larry Breitfelder, were the official proponents of Proposition G.  They took the necessary steps to place their ballot initiative before the voters of the City of Chula Vista in a city-wide election.  The individual Plaintiffs have the requisite Article III standing to challenge the proponent name disclosure requirement.[11]

To understand Plaintiffs' argument, a review of the statutory scheme is helpful.  Section 903 of the Chula Vista City Charter governs local ballot initiatives.  It also incorporates provisions of the California Elections Code.[12]  The California Elections Code, in turn, addresses in sections

---

[10] Plaintiffs describe this as both a facial and an as-applied constitutional challenge.  However, in their papers they do not argue the facial challenge.  Perhaps for good reason.  For a successful facial challenge, Plaintiffs would have to establish how the disclosure requirement is unconstitutional in all of its applications, or if not all, at least in "a substantial number of its applications . . . judged in relation to the statute's plainly legitimate sweep."  *Wash. State Grange*, 552 U.S. at 449; *Stevens*, 130 S. Ct. at 1587.  California's healthy ballot initiative experience tends to demonstrate that most proponents have no First Amendment objection to disclosing their names on circulated petitions.  Instead of establishing unconstitutional applications to other individuals, Plaintiffs focus their argument on themselves.  Consequently, their action is treated as an as-applied challenge.

[11] The individual Plaintiffs say they intend to initiate other local ballot initiatives.  If they do, they will have to comply with these same laws in the future.  Because of the asserted injury-in-fact, they possess Article III standing.

[12] Section 903 of the Chula Vista City Charter states,
There are hereby reserved to the electors of the City the powers of the initiative and referendum . . . .  The provisions of the Election Code of

---

9202, 9205, and 9207, the process by which a ballot initiative may be placed on the ballot. Election Code § 9202(a) describes the first step and requires a proponent to sign his or her name to a "Notice of Intent to Circulate Petition."[13]  The next step requires publication of the Notice of Intent in a newspaper of general circulation.  Cal. Elec. Code § 9205.  The third step requires circulating copies of the Notice of Intent and gathering signatures from registered voters.[14]

### Anonymous Speech Under the First Amendment

Kneebone and Breitfelder argue that they enjoy a First Amendment right to engage in anonymous political speech.  They contend the third step name disclosure requirement trenches on that right.  Plaintiffs are correct that the First Amendment right to free speech includes a right to speak anonymously.  This is especially true for political speech.  The Supreme Court observes,

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent.  Anonymity is a shield from the tyranny of the majority.  It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society.

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (citations omitted).  In that regard, the Ninth Circuit notes that protection for anonymous speech under the First Amendment "was first articulated a half-century ago in the context of political speech," if not earlier.  *In re*

---

the State of California, as the same now exists or may hereafter be amended governing the initiative and referendum . . . shall apply to the use thereof in the City so far as such provisions of the Elections Code are not in conflict with this Charter.

[13] California Elections Code § 9202(a) states in relevant part,
Before circulating an initiative petition in any city, the proponents of the matter shall file with the elections official a notice of the intention to do so, which shall be accompanied by the written text of the initiative . . . .  The notice shall be signed by at least one, but not more than three, proponents . . . .

[14] California Elections Code § 9207 states,
The proponents may commence to circulate the petitions among the voters of the city of signatures by any registered voter of the city after publication or posting, or both, as required by Section 9205, of the title and summary prepared by the city attorney.  Each section of the petition shall bear a copy of the notice of intention and the title and summary prepared by the city attorney.

*Anonymous Online Speakers*, 661 F.3d 1168, 1172 (9th Cir. 2011) (citing *Talley v. California*, 362 U.S. 60, 64-65 (1960)).  Anonymous political speech in the United States actually goes back much farther than 50 years.  "Undoubtedly the most famous pieces of anonymous American political advocacy are *The Federalist Papers,* penned by James Madison, Alexander Hamilton, and John Jay, but published under the pseudonym 'Publius.'"  *Id.* at 1172-73 (citing *McIntyre*, 514 U.S. at 344 n.6).  Nevertheless, the government may place limits on anonymous speech.  "The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue."  *Id.* (citing *Meyer v. Grant*, 486 U.S. 414 (1988)).

For their part, Plaintiffs rely heavily on *McIntyre* and *ACLU of Nev. v. Heller*, 378 F.3d 979 (9th Cir. 2004).  They argue that under *McIntyre* and *Heller,* the First Amendment protects their right to anonymously propose a ballot initiative.  However, while both cases involved ballot initiatives, neither *McIntyre* nor *Heller* consider whether an official proponent of a ballot initiative enjoys a right to anonymity.  *McIntyre* concerned "an individual leafleteer who, within her local community, spoke her mind, but sometimes not her name," and was fined $100 for omitting her name from her leaflets.  514 U.S. at 358 (Ginsburg, J., concurring).  *Heller*, likewise concerned an organization whose members wished to distribute anonymous flyers about an existing ballot initiative.  378 F.3d 979; *see also Hatchett v. Barland*, __ F. Supp. 2d __, 2011 WL 4336740 (E.D. Wis. Sept. 14, 2011) (individual sanctioned for mailing anonymous postcards about existing ballot measures).

Neither *McIntyre* nor *Heller* address the question raised by this case: whether a proponent of a ballot initiative may remove his or her name from copies of the notice of intent circulated by signature gatherers, and still qualify the measure for an election.  Some cases have focused on those who do the footwork of circulating petitions and gathering signatures.[15]  Other cases have

---

[15] *See e.g., Buckley v. Am. Const. Law Found.* ("*Buckley II*"), 525 U.S. 182 (1999); *Washington Initiatives Now! v. Rippie* ("*WIN*"), 213 F.3d 1132 (9th Cir. 2000).

considered anonymous speech for ballot initiative signers.[16]  And still other cases have evaluated

disclosure requirements for those who contribute money to a ballot initiative campaign and those

who spend money advocating for and against ballot initiatives.[17]  However, no decision cited by

the parties or found by this Court has recognized a First Amendment right to anonymously

*propose* a ballot measure or, having recognized such a right weighed a state's competing interests

in requiring the public disclosure of the proponent's identity.

Plaintiffs next argue that the issue decided in *Buckley v. Am. Const. Law Found.* ("*Buckley
II*"), 525 U.S. 182 (1999) and *Washington Initiatives Now! v. Rippie* ("*WIN*"), 213 F.3d 1132 (9th

Cir. 2000) – "whether government may ban anonymous petition circulation" – is the same as in

this case.  But the issue is not the same.  *Buckley II* and *WIN* deal with the rights of workers who

gather initiative signatures.  Circulators of ballot initiatives have a recognized First Amendment

right to maintain their own anonymity at the point in time when a circulator engages in speech

with a person whose signature he is soliciting.  On this basis, *Buckley II* struck down a Colorado

law that required circulators to wear a name badge.  525 U.S. at 198-99.  *Buckley II* was troubled

by the fact that a circulator was required to disclose his identity at a time "when reaction to the

circulator's message is immediate and 'may be the most intense, emotional, and unreasoned.'" *Id.*

at 199.  The circulator was thus exposed to a "risk of 'heat of the moment' harassment."  *Id.*

*WIN*'s facts are closer, but still concern only circulators.[18]

---

[16]  *See Doe v. Reed*, 130 S. Ct. 2811 (2010).

[17]  *See Family PAC v. McKeena*, __ F.3d __, 2012 WL 266111 (9th Cir. Jan 31, 2012)
(disclosure of identity of small dollar contributors); *Sampson v. Buescher*, 625 F.3d 1247 (10th Cir.
2010) (same); *Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009)
(disclosure of *de minimis* contributors); *Human Life of Wash. v. Brumsickle*, 624 F.3d 990, 1005 (9th
Cir. 2010), *cert. denied*, 131 S. Ct. 1477 (2011) (disclosure of expenditures for ballot measure
advocacy); *Cal. Pro-Life Council v. Randolph*, 507 F.3d 1172 (9th Cir. 2007) (same); *Cal. Pro-Life
Council v. Getman*, 328 F.3d 1088 (9th Cir. 2003) (same); *ProtectMarriage.com v. Bowen*, __ F. Supp.
2d. __, 2011 WL 5507204 (E.D. Cal. Nov. 4, 2011) (disclosure of contributors).

[18]  *WIN* concerned a Washington requirement that petition circulators report their names and
addresses at a later time.  In that case, the Ninth Circuit held that the circulators' right to anonymity
outweighed the state's interest in combating fraud and the state's interest in informing voters.  *WIN*,
213 F.3d at 1139-40.  Significantly, *WIN* discounted Washington's informational interest because the
informational interest was served by other requirements – including another requirement that provided
a way for Washington voters to learn *who had proposed the ballot measure*.  *Id.*

But Plaintiffs Kneebone and Breitfelder are not circulators; they are the official proponents. As is common with ballot initiative campaigns, Plaintiffs hired professional circulators to gather signatures. As a result, these Plaintiffs were not exposed to the same risk of "heat of the moment" harassment faced by circulators in *Buckley II*. Since Plaintiffs here are not circulators, and the difference is significant, neither *Buckley II* nor *WIN* is controlling.

**Limits on Anonymous Speech**

The Ninth Circuit has said that "the right to speak, whether anonymously or otherwise, is not unlimited." *In re Anonymous Online Speakers*, 661 F.3d at 1173. It is important to point out that the proponent name disclosure requirement is not a prohibition on speech and does not criminalize speech. Instead, it requires Breitfelder and Kneebone to disclose their identity as official proponents of the legislation. As the Supreme Court observes, disclosure requirements "may burden the ability to speak [or not speak], but they . . . do not prevent anyone from speaking." *Citizens United*, 130 S. Ct. at 914 (citations omitted). For testing the constitutionality of a disclosure requirement, the government burden on speech must pass *exacting scrutiny*, "meaning that it is substantially related to a sufficiently important governmental interest." *Human Life of Wash. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1477 (2011); *see also Reed*, 130 S. Ct. at 2818 (*exacting scrutiny* applies where a statute imposes disclosure requirement rather than a prohibition on speech).

California argues that it has two important interests related to the disclosure requirement that outweigh a proponent's right to anonymity: (1) an electoral informational interest; and (2) an interest in preserving the integrity of the electoral process.[19]

**California's Informational Interest**

In its brief, California describes its informational interest: "because the right to propose

---

[19] The government does not assert an interest in preventing corruption. There is usually no state interest in preventing *quid pro quo* corruption where a ballot measure is concerned. "Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections . . . simply is not present in a popular vote on a public issue." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 790 (1978). On the other hand, "preserving the integrity of the electoral process" is an "interest[] of the highest importance." *Id.* at 788-89.

initiative legislation is limited to electors, there is an important interest in providing information as

to who is formally proposing legislation."  Much has been written recently about a state's

informational interest in connection with ballot measure campaigns.  Most recently, the Ninth

Circuit observed, "[w]e have repeatedly recognized an important (and even compelling)

*informational interest* in requiring ballot measure committees to disclose information about

contributions."  *Family PAC v. McKeena*, __ F.3d __, 2012 WL 266111 at *3 (9th Cir. Jan. 31,

2012) (emphasis added).  In *Human Life*, the Ninth Circuit described at length the informational

interests at play when it comes to ballot initiatives.  624 F.3d 990 *passim*.  The Ninth Circuit

explained, "[p]roviding information to the electorate is vital to the efficient functioning of the

marketplace of ideas, and thus to advancing the democratic objectives underlying the First

Amendment . . . .  Thus, by revealing information about the contributors to and participants in public

discourse and debate, disclosure laws help ensure that voters have the facts they need to evaluate

the various messages competing for their attention."  *Id.* at 1005.  *Human Life* highlighted the need

to know who is speaking during a ballot initiative election.  The court remarked, "we have

frequently reiterated . . . that in the cacophony of political communications through which

California voters must pick out meaningful and accurate messages . . . being able to evaluate who is

doing the talking is of great importance."  *Id.* at 1006 (internal quotation marks and citations

omitted).  In this way*, Human Life* reiterates that a state's informational interest in "who is doing

the talking" is substantial for a ballot measure campaign.

> [C]itizens, acting as lawmakers, have an interest in knowing who is
> lobbying for their vote . . . .  Indeed, the provision of this information
> is particularly critical in the ballot measure context, especially when
> one considers that ballot-measure language is typically confusing, and
> the long-term policy ramifications of the ballot measure are often
> unknown.  If nothing else, knowing who backs or opposes a given
> initiative will give voters a pretty good idea of who stands to benefit
> from the legislation.

*Id.* at 1007-08 (internal quotation marks and citations omitted).

Human Life* evaluated Washington's burden on ballot measure spending, rather than non-

financial advocacy.  While not directly on point, the case illustrates the notion that a state's

informational interest may be just as strong in the context of a ballot measure campaign as it is in a

candidate campaign for public office.  As one court recently observed, "[t]he Ninth Circuit . . . has

1    held that the informational interest applies even more strongly in the context of ballot initiatives."

2    *Justice v. Hosemann*, __ F. Supp. 2d __, 2011 WL 5326057, at *10 (N.D. Miss. Nov. 3, 2011).

3            To reiterate, Plaintiffs argue that *McIntyre* should control and that the right to political

4    anonymity outweighs California's informational interest.  But, the Ninth Circuit has traveled down

5    a parallel road before.  In *California Pro-Life Council v. Getman*, the Ninth Circuit explained,

6    "[l]ike the Court in *McIntyre*, [the plaintiff] asks us to disregard California's informational interest

7    in disclosure and hold that ballot-measure advocacy is absolutely protected speech.  We think

8    *McIntyre* is distinguishable from the case at bar, as the *McIntyre* Court itself observed."  328 F.3d

9    1088, 1104 (9th Cir. 2003).  *Getman* described California's informational interest:

10                   Voters act as legislators in the ballot-measure context, and interest
                     groups and individuals advocating a measure's defeat or passage act
11                   as lobbyists; both groups aim at pressuring the public to pass or
                     defeat legislation.  We think Californians, as lawmakers, have an
12                   interest in knowing who is lobbying for their vote, just as members of
                     Congress may require lobbyists to disclose who is paying for the
13                   lobbyists' services and how much.

14    *Id.* at 1106 (citation omitted).  California voters, as lawmakers, have a substantial informational

15    interest in knowing the identity of those soliciting their votes.  California voters, as lawmakers, also

16    have a substantial interest in knowing the identity of the official sponsors of a ballot initiative who

17    seek their signature approval to put the measure to a public vote.  *Cf. Cal. Pro-Life Council v.*

18    *Randolph*, 507 F.3d 1172, 1179 n.8 (9th Cir. 2007) ("We note that in the context of disclosure

19    requirements, the government's interest in providing the electorate with information related to

20    election and ballot issues is well-established.").  It may be true, as Plaintiffs argue, that "the best

21    test of truth is the power to get itself accepted in the competition of the  market."  *See McIntyre*,

22    514 U.S. at 347 n.11.  And it may be that "[p]eople are intelligent enough to evaluate the source of

23    an anonymous writing" and can "evaluate its anonymity along with its message."  *Id.*  But it is also

24    true that, "[o]f course, the identity of the source is helpful in evaluating ideas."  *Id.*

25            California has made its own decision.  For purposes of ballot measure signature gathering,

26    the State has decided that it is in the best interest of its voters (as petition signers) to know the name

27    of a ballot measure's official proponent.  California has a legitimate and substantial interest in

28    fostering an informed and educated electorate.  *See Caruso v. Yamhill Cnty.*, 422 F.3d 848, 861 (9th

Cir. 2005), *cert. denied*, 126 S. Ct. 1786 (2006).  Section 9207, by requiring the circulated petition to bear a copy of the Notice of Intent, which in turn discloses the names of the official proponents, is directly related to that informational interest.  Section 9207 thus plays a role by which California voters may inform themselves in exercising control of their government (*i.e.*, determining whether an issue has enough merit to be placed on the election ballot).  Because the disclosure requirement that the Plaintiffs identify themselves as official proponents during the gathering of signatures is substantially related to a sufficiently important governmental interest, the statutory scheme survives exacting scrutiny.

### California's Interest In the Integrity of the Electoral Process

California also asserts an interest in preserving the integrity of the electoral process.  The State explains that this interest is not limited to preventing fraud, but "extends more generally to promoting transparency and accountability in the electoral process."  The interest is similar to Washington's interest recognized by the Supreme Court as important in *Reed*.  *Reed* found, "[t]he State's interest in preserving the integrity of the electoral process is undoubtedly important."  130 S. Ct. at 2819; *see also Buckley II*, 525 U.S. at 191 ("States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process.").

Plaintiffs point out that questions as to whether the name of the proponent is fraudulent or authentic, could be answered by the first two required proponent name disclosures in the California scheme.  But the disclosure requirement goes to preserving the electoral process in another way.  As discussed previously, the right to act as an official proponent is limited to electors.  An elector is a living natural person, residing within the political subdivision, and able to register to vote.  By requiring a proponent's name to appear on the circulated copy of the ballot initiative, the local voters who consider the initiative may recognize whether the proponent qualifies as an elector.  Thus, the disclosure requirement also serves the government interest in "promoting transparency and accountability in the electoral process."  *Reed,* 130 S. Ct. at 2819-20.

Because California's informational interest and its interest in preserving the integrity of the electoral process is served by the proponent identity disclosure requirement on circulated petitions, and because the dual interests reflect the seriousness of the actual burden on the First Amendment

1    rights of official proponents, the statutes survive exacting scrutiny on their face.

2           **The Burden As Applied to Plaintiffs' Speech**

3           Plaintiffs also attempt to demonstrate the burden as applied specifically to Kneebone and

4    Breitfelder.  Unfortunately, the evidence demonstrates only a slight burden on Kneebone's and

5    Breitfelder's right to speak anonymously.

6           The Supreme Court explains that "those resisting disclosure can prevail under the First

7    Amendment if they can show 'a reasonable probability that the compelled disclosure of personal

8    information will subject them to *threats, harassment, or reprisals* from either Government officials

9    or private parties.'" *Reed*, 130 S. Ct. at 2820 (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976))

10   (emphasis added); *see also Family PAC*, 2012 WL 266111 at *4 ("The Court explained that in an

11   atypical case presenting a bona fide threat of harassment or retaliation, an aggrieved party could

12   seek an exemption from compelled disclosure by making a sufficient evidentiary showing in an as-

13   applied challenge.").

14          Plaintiffs offer scant support for their as-applied challenge.  Both Kneebone and Breitfelder

15   willingly disclosed their identity in two prior disclosures: on the initial Notice of Intent filing and

16   later on the published copy of the Notice of Intent.  Theses actions by Kneebone and Breitfelder

17   undercut the claim of a severe burden on their right to anonymous speech.  At the same time, absent

18   is evidence of any actual threats or harassment.  Complicating the evidentiary presentation is the

19   fact that both Kneebone and Breitfelder were active in other public ways during the campaign.

20          Rather than maintaining a low public profile consistent with a desire for anonymity, both

21   Kneebone and Breitfelder participated fully in public debate over Proposition G.  For example, both

22   proponents appeared before the Chula Vista City Council on two occasions to speak in support of

23   the ballot initiative.  Those meetings were broadcast on public television.  Then, Kneebone and

24   Breitfelder signed the "Rebuttal to the Argument Against Proposition G" that was printed in the

25   pre-election Voter Information pamphlet.  That pamphlet was mailed to all registered voters.

26   Kneebone's name and photograph also appeared on two election mailers in support of the ballot

27   initiative sent to residents of Chula Vista.  And Kneebone and Breitfelder featured in a video in

28   support of the ballot initiative that was posted on YouTube and on the "Yes on G" website.  At the

1  same time, Breitfelder was president of The Chula Vista Taxpayers Association which publicly

2  supported Proposition G and sent out mailers to voters to that effect.  As part of his own campaign

3  for City Councilman he told the League of Women Voters that he was an advocate for Proposition

4  G.  He also expressed his support for the ballot initiative on his campaign website and in his

5  campaign literature.

6         For the as-applied challenge, the strongest evidence is Kneebone's own statement that she

7  feared harassment.  In her statement she says that she feared harassment from union members after

8  revealing her name on the circulated petition.  However, while she may have feared harassment, she

9  has not shown instances of actual harassment.  Without more, she is unable to show that there is a

10  reasonable probability of future harassment.  Even if she were able to show actual harassment,

11  Plaintiffs would still have to draw a connection between the harassment suffered and the disclosure

12  of her name on the circulated petition.  That task would be complicated by Kneebone's various

13  other public statements.

14         The as-applied showing for Breitfelder, though different, is no stronger.  Breitfelder believes

15  he was subjected to "reprisals" during his own campaign for City Councilman as a result of being

16  identified as a proponent of the ballot initiative.  Breitfelder, in more ways than Kneebone, placed

17  himself in the middle of the public political discourse over Proposition G.  Breitfelder was a

18  candidate for public office.  He identifies the "reprisals" as being negative election campaign

19  literature highlighting his own candidacy as anti-union.  The campaign literature[20] reads:

> Pat's Opponent, Larry Breitfelder is: -An anti-worker activist and was
> the spokesperson for the discriminatory Yes on G campaign -Backed
> by anti-union contractors who are driving down workplace standards
> and benefits.  Larry Breitfelder, The Anti-Union Candidate.

22  Rather than a "reprisal" in the sense *Reed* uses the term, this type of political advertisement is

23  commonplace and core political speech.  As detailed above, however, Breitfelder was active in

24  supporting Proposition G in many ways, including tying his support to his own candidacy for

---

[20] The campaign mailer itself is political speech.  It does not clearly advocate for or against the election or defeat of either candidate.  It communicates information about Breitfelder's candidate positions regarding unions.  As with all such pieces, if the reader is against unions, he will like candidate Breitfelder's position; if the reader is for unions, she will dislike candidate Breitfelder's positions. The literature does not identify Breitfelders' identity as an official proponent of Proposition G.  It does identify Breitfelder as a spokesperson for the "Yes on G" campaign.

09cv0897

office.  Consequently, accurate speech by a candidate's political opponents does not qualify as a reprisal.  And even if it did, it is not clearly tied to the proponent name disclosure requirement.

Further undercutting the as-applied challenge is the evidence that Kneebone and Breitfelder objected to disclosure based on reasons other than a desire to speak anonymously.  They explained in depositions that the reason they did not want their names on the circulated petition was not a desire to maintain anonymity, or a desire that Proposition G be judged solely on its merits.  Quite the opposite.  They both explained that they wanted voters to know that the "correct" sponsor of the ballot initiative was the Association of Builders and Contractors, Inc. and the Chula Vista Citizens for Jobs and Fair Competition.  For example, Kneebone testified,[21]

| | |
|---|---|
| Waters: | My question there, Ms. Kneebone, is: It appears to me that you have taken numerous opportunities to make it public in Chula Vista that you support Proposition G.  Why – what is your objection to – how is it that you want to remain anonymous? |
| Kneebone: | I guess I would still have to go back to the point where I just felt it was more important that it be known that it was that Chula Vista Citizens group through the ABC than just me. |
| Waters: | Okay.  But would it be fair to say, then, it's not so much that you wanted to be anonymous, but you thought that somebody – some other organization's name ought to be there than you? |
| Kneebone: | Yes. |
| Waters: | And the other organizations would be ABC and Chula Vista Citizens – |
| Kneebone: | Yes. |

Similarly, Breitfelder testified,[22]

| | |
|---|---|
| Johnson: | Okay.  Would you have preferred that Chula Vista Citizens or ABC had been named proponent of Proposition G? |
| Breitfelder: | At that point, yes. |
| Johnson: | At what point are you referring to? |
| Breitfelder: | During the petition phase, I believe that should have been the |

---

[21] See Pl. Mot. for Summary Judgment, Exh. 6 (Dep. of Lori Kneebone dated Mar. 15, 2011), at 32:4 to 32:19; see also Exh. 6, at 71:3 to 71:14 (same).

[22] See Pl. Mot. for Summary Judgment, Exh. 7 (Dep. of Larry Breitfelder dated Mar. 15, 2011), at 107:8 to 107:25 (attorney objections omitted).

09cv0897

| | | |
|---|---|---|
| 1 | | focus. |
| 2 | Johnson: | So on the circulated version – |
| 3 | Breitfelder: | Circulated version. |
| 4 | Johnson: | – you would have preferred the organizations that were the financial backers? |
| 5 | | |
| 6 | | . . . |
| 7 | Breitfelder: | Yes.  At that point in the process, I believe it would have been better and most important – or most appropriate and most beneficial for the community for the Chula Vista organizations to have been identified. |
| 8 | | |

This testimony suggests that Kneebone and Breitfelder were not interested in engaging in anonymous political speech so much as they were interested in voters being informed of the names of the organizational sponsors of Proposition G.  Consequently, Plaintiffs have not made the particularized showing required for an as-applied challenge.   Plaintiffs' hurdle is not high, but it is a hurdle. *Reed*, 130 S. Ct. at 2823 (Alito, J., concurring) (citations omitted) ("speakers must be able to obtain an as-applied exemption without clearing a high evidentiary hurdle").  Plaintiffs need show "only a reasonable probability that disclosure will lead to threats, harassment, or reprisals." *Id.* (citations omitted).

In other words, Plaintiffs could have presented specific evidence of past or present harassment, a pattern of threats or specific manifestations of public hostility, or an array of evidence to meet the standard. *Id.* (citations omitted).  But Plaintiffs' evidence does not meet the standard. The one instance of a possible reprisal came in the form of a campaign advertisement describing Mr. Breitfelder as "anti-union" and a supporter of Proposition G.  That evidence is ambiguous.  The stances taken by Breitfelder in his role as a candidate for public office were publicized in a myriad of other ways and open to public comment.[23]   In contrast, there is no evidence that one or more of the thousands of registered Chula Vista voters who were approached to sign the circulated petition saw the names of Breitfelder and Kneebone and threatened or harassed the proponents.  In addition, the deposition testimony undercuts Plaintiffs' First Amendment claim that their desire for

---

[23] As a general matter, it has never been suggested that core political speech may be considered a "reprisal" in response to a mandated election disclosure, which in turn would permit avoiding the mandated disclosure.

1   anonymity rested upon a desire that the public consider only the merits of the proposition without

2   prejudgment.  The deposition testimony shows that what the proponents really wanted is better

3   disclosure so that the public would have more information with which to judge the merits of the

4   proposition.  In essence, Breitfelder and Kneebone wanted to satisfy the same informational interest

5   identified by the government.

6          To sum up, the California disclosure requirement imposed only slight burdens on Plaintiffs'

7   right to engage in anonymous political speech, as applied to them.  Therefore, the as-applied

8   challenge fails.

9   **C.**        **THE VAGUENESS CHALLENGES**

10         Plaintiffs and the State also move for summary judgment on Plaintiffs' vagueness

11  challenges in Counts 3, 4, and 5.  "[W]e insist that laws give the person of ordinary intelligence a

12  reasonable opportunity to know what is prohibited, so that he may act accordingly . . . . [W]here a

13  vague statute 'abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit

14  the exercise of those freedoms." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)

15  (citations omitted).  Nevertheless, "'perfect clarity and precise guidance have never been required

16  even of regulations that restrict expressive activity.'"  *United States v. Williams*, 128 S. Ct. 1830,

17  1845 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

18         **"Proponent" and "Publish" Are Not Vague Terms**

19         In Count 3, Plaintiffs attack as unconstitutionally vague, the term "proponent" and "publish"

20  as used in California Elections Code § 342.  They argue that because a "proponent" is defined as

21  "the person or persons who publish a notice or intention to circulate petitions," then an association

22  may be a proponent when an association publishes the notice.  They argue, that publishing means

23  paying for the publication.  They then contend that since Chula Vista Citizens actually paid for the

24  publishing of the notice of intention for Proposition G, then Chula Vista Citizens may be the

25  official proponent.

26         This Court discerns no such ambiguity or vagueness.  A statute that implicates free speech

27  rights "will survive a facial challenge so long as it is clear what the statute proscribes in the vast

28  majority of its intended applications *Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d

1133, 1146 (9th Cir. 2009) (citations omitted).  Men of ordinary intelligence would understand that the general "proponent" language of the state provision dealing with local initiatives, is clarified by the specific "elector" language found in Chula Vista Charter § 903.  In this way, the state statutes simply leave to each municipality to choose which persons may propose a local initiative.  Read in context, California Elections Code 342 is not susceptible to Plaintiffs' reading that an association or incorporation may become an official proponent merely by paying for cost of publication.  It is only by tearing the terms out of their overall context that ambiguity may be created.  The terms are not unconstitutionally vague.

### "Bear a Copy" Is Not a Vague Phrase

In Count 4, Plaintiffs attack as unconstitutionally vague the "bear a copy" requirement contained in California Elections Code § 9207.  When the proponents of a ballot initiative begin the process of circulating the petitions, Section 9207 requires each section of the petition to "bear a copy of the notice of intention."  They argue that § 9207 is not clear whether a copy must include the names of the official proponents.  They argue that California Elections Code § 9202 permits the circulated copy to be less than an exact copy and that a substantially correct copy, but a copy without proponents names, should qualify.

Again, this Court discerns no such ambiguity or vagueness.  Section 9202 contains language to be used for the introduction of the notice of intent.  That introductory language need not be exact.  Section 9202's leniency in the creation of the notice of intent cannot be reasonably imported into § 9207 and read as permitting something less than a complete copy of the notice of intent.  Even if it could, it cannot be reasonably argued that the omission of the important element of the proponents' names would be in substantial compliance with the bear-a-copy language of § 9207.  "A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement." *Human Life*, 624 F.3d at 1019 (citations omitted).  The phrase is not susceptible to arbitrary enforcement.

### "In Substantially the Following Form" Is Not a Vague Phrase

In Count 5, Plaintiffs attack as unconstitutionally vague the phrase "in substantially the

09cv0897

following form" requirement contained in California Elections Code § 9202.[24]  Plaintiffs argue that people of reasonable intelligence cannot discern what is meant by the phrase "in substantially the following form."  This Court discerns little ambiguity and none sufficient to find the statute void for vagueness.  The statutory terms attacked by Plaintiffs as being vague ("proponent," "copy," and "substantially in the following form") are more precise than the sorts of terms that the Supreme Court has previously struck down as vague and they do not expose Plaintiffs to criminal or civil sanctions.  *Cf., Human Life*, 624 F.3d at 1020 n.10 (disclosure law imposed civil penalties and criminal penalties).  The Supreme Court explains, "[w]e have in the past struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent' – wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2720 (2010) (citations omitted).  Because the statutory terms at issue here are clear in their application to Plaintiffs' conduct and are not tied to criminal culpability, the vagueness challenges fail.  *Id.*

## IV.  CONCLUSION

The elector (or natural person) requirement to be an official ballot initiative proponent is a constitutionally permissible restriction for self-government.  Likewise, the official proponent name disclosure requirement on the circulated petitions is a permissible burden on the right to anonymous speech.  Finally, none of the statutory terms challenged are so vague as to offend the Constitution. Therefore, Plaintiffs' Motion for Summary Judgment is denied.  Defendants' cross-motion for summary judgment is granted.  Judgment shall be entered for the Defendants on all Counts.

IT IS SO ORDERED.

DATED:  March 22, 2012

_____
Hon. Roger T. Benitez
United States District Judge

---

[24] Section 9202 provides, "The notice . . . shall be in substantially the following form:
Notice of Intent to Circulate Petition
Notice is hereby given by the persons whose names appear hereon of their intention to circulate the petition within the City of _____ for the purpose of _____.  A statement of the reasons of the proposed action as contemplated in the petition is as follows:  [blank]"

09cv0897